# EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA<br>☒ EEOC | 440-2007-00019 |

IDHR _____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Janet Parham | 630-416-1996 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1824 Shetland Road | Naperville, IL 60565 | 1/6/53 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Advocate Good Samaritan Hosp. | 15 plus | 630-275-5907 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 3815 Highland Avenue | Downers Grove, IL 60515 | DuPage |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST _____    LATEST 9/15/06
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached.

RECEIVED EEOC
OCT 02 2006
SEP 27 2006
CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date 9/21/06    *Janet Parham* (signature)<br>Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (REV. 3/01)

ATTACHMENT TO CHARGE

**CHARGING PARTY: JANET PARHAM**

**RESPONDENT: ADVOCATE GOOD SAMARITAN HOSPITAL**

I.  A. ISSUE/BASIS

Termination on September 15, 2006 because of my disability, inflammatory breast cancer.

B. PRIMA FACIE ALLEGATIONS

1. I was employed by Respondent as a Nurse/Lactation Consultant from 1997 until I was terminated on September 15, 2006.

2. I am disabled within the meaning of the Americans with Disabilities Act.

3. Respondent has been aware of my disability since it was diagnosed in April 2004.

4. Due to the virulent nature of my disease, I initially underwent aggressive chemotherapy treatments prior to my mastectomy in August 2004.

5. I had serious and life threatening side effects from the chemotherapy, as well as serious and painful post operation complications from the mastectomy.

6. Following my mastectomy, I underwent radiation treatments. Due to the virulent nature of my disease, my doctors recommended that I undergo 31 treatments, as opposed to the standard 25. I suffered serious side effects from the radiation treatments.

7. I am currently on several medications in an effort to prevent the further metastasis of the breast cancer. These medications cause serious side effects, including but not limited to degenerative bone and joint diseases.

8. Despite my disability and the many serious complications which developed as a result of the disease and its treatments, I continued to work and perform my job in a satisfactory manner.

9. However, since my diagnosis of breast cancer in 2004, my immediate supervisor, Marie Levy ("Levy") subjected me to discriminatory treatment based upon my disability, which included but is not limited to the following:

a.  Within one week of my return to work in September 2004 following my mastectomy, I received a negative email from my supervisor regarding the proper use of my time. Prior to this occurrence, I do not recall receiving this type of admonishment from Levy or any supervisors during my tenure with Respondent.

b.  I took my radiation treatments during my lunch break, so that I could continue to work. At about the same time that my radiation treatments were ending, I received a Level 3 Warning on or about December 23, 2004 from my supervisor.

c.  In February 2005, I received a "does not meet expectations" performance review from Levy. All my previous reviews, by both Levy and prior supervisors, were "meets expectations" or "exceeds expectations."

d.  The review contained numerous unfounded accusations, anonymous hearsay statements allegedly generated by my co-workers and generalized unprofessional personal attacks upon me. The performance review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

e.  Per the review, I was required to attend three service in excellence classes and one interpersonal communication class.

f.  Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

g.  In January 2006, I was on a medical leave of absence following a laminectomy. Although my doctor permitted me to return to work earlier than expected and with no restrictions, my supervisor prohibited me from returning to my duties as a Lactation Consultant for the first two weeks of my return to work.

h.  In March 2006, I received a "does not meet expectations" performance review. Once again, the review contained numerous unfounded accusations, anonymous hearsay statements and generalized unprofessional personal attacks upon me, along with a psychological diagnosis of "passive aggressive" to explain my behavior. The review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

  i. Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

  j. Per the performance evaluation, I was ordered to attend mandatory EAP and was placed on a Performance Deficiency Notice ("PDN").

  k. The PDN set forth weekly meetings with my supervisor for a period of 30 days to one year and contained a litany of expectations which were unreasonable, petty, and a blatant effort to set me up for failure.

  l. Thereafter, I received weekly evaluations from my supervisor which were non-productive and continued to set forth a litany of expectations which were unreasonable, petty and a blatant effort to set me up for failure. For instance, one of the items in the "summary of expected level of performance" stated that "no evidence of verbal, non-verbal, defensive or insubordinate behavior toward superiors or co-workers. No evidence of anger, passive-aggressive or silent behavior."

10. My non-disabled co-workers were not subjected to this type of harassment and scrutiny.

11. I complained to Levy's supervisor, Aeran Garcia, on numerous occasions about this treatment. On or about March 31, 2006, I complained to Respondent's Human Resource Specialist, Julie Ott, that I believed I was being discriminated against by Levy because of my disability. I also informed Levy and Garcia that I had complained to Julie Ott of discrimination based upon my disability.

12. No action was taken to ameliorate my complaints and any alleged investigation of my complaints was totally inadequate. Morever, based upon information and belief, Respondent has grossly misconstrued my co-workers' comments about their relationship with me.

13. On September 15, 2006, Respondent terminated my employment.

14. I believe my termination was in violation of the Americans with Disabilities Act.

II. A. ISSUE/BASIS

Termination on September 15, 2006 because of perceived disabilities, inflammatory breast cancer and mental illness.

B. **PRIMA FACIE ALLEGATIONS**

1. I was employed by Respondent as a Nurse/Lactation Consultant from 1997 until I was terminated on September 15, 2006.

2. Respondent perceived me as disabled, within the meaning of the Americans with Disabilities Act.

3. Respondent has been aware that I suffer from inflammatory breast cancer since it was diagnosed in April 2004.

4. Due to the virulent nature of my disease, I initially underwent aggressive chemotherapy treatments prior to my mastectomy in August 2004.

5. I had serious and life threatening side effects from the chemotherapy, as well as serious and painful post operation complications from the mastectomy.

6. Following my mastectomy, I underwent radiation treatments. Due to the virulent nature of my disease, my doctors recommended that I undergo 31 treatments, as opposed to the standard 25. I suffered serious side effects from the radiation treatments.

7. I am currently on several medications in an effort to prevent the further metastasis of the breast cancer. These medications cause serious side effects, including but not limited to degenerative bone and joint diseases.

8. Despite my disability and the many serious complications which developed as a result of the disease and its treatments, I continued to work and perform my job in a satisfactory manner.

9. However, since my diagnosis of breast cancer in 2004, my immediate supervisor, Marie Levy ("Levy") subjected me to discriminatory treatment based upon my perceived disabilities, which included but is not limited to the following:

    a. Within one week of my return to work in September 2004 following my mastectomy, I received a negative email from my supervisor regarding the proper use of my time. Prior to this occurrence, I do not recall receiving this type of admonishment from Levy or any supervisors during my tenure with Respondent.

    b. I took my radiation treatments during my lunch break, so that I could continue to work. At about the same time that my radiation treatments were ending, I received a Level 3 Warning on or about December 23,

2004 from my supervisor.

In February 2005, I received a "does not meet expectations" performance review from Levy.  All my previous reviews, by both Levy and prior supervisors, were "meets expectations" or "exceeds expectations."

The review contained numerous unfounded accusations, anonymous hearsay statements allegedly generated by my co-workers and generalized unprofessional personal attacks upon me.  The performance review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

Per the review, I was required to attend three service in excellence classes and one interpersonal communication class.

Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

In January 2006, I was on a medical leave of absence following a laminectomy.  Although my doctor permitted me to return to work earlier than expected and with no restrictions, my supervisor prohibited me from returning to my duties as a Lactation Consultant for the first two weeks of my return to work.

In March 2006, I received a "does not meet expectations" performance review.  Once again, the review contained numerous unfounded accusations, anonymous hearsay statements and generalized unprofessional personal attacks upon me, along with a psychological diagnosis of "passive aggressive" to explain my behavior. The review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

Per the performance evaluation, I was ordered to attend mandatory EAP and was placed on a Performance Deficiency Notice ("PDN").

The PDN set forth weekly meetings with my supervisor for a period of 30 days to one year and contained a litany of expectations which were unreasonable, petty, and a blatant effort to set me up for failure.

1. Thereafter, I received receiving weekly evaluations from my supervisor which were non-productive and continued to set forth a litany of expectations which were unreasonable, petty and a blatant effort to set me up for failure. For instance, one of the items in the "summary of expected level of performance" stated that "no evidence of verbal, non-verbal, defensive or insubordinate behavior toward superiors or co-workers. No evidence of anger, passive-aggressive or silent behavior."

10. My non-disabled co-workers were not subjected to this type of harassment and scrutiny.

11. I complained to Levy's supervisor, Aeran Garcia, on numerous occasions about this treatment. On or about March 31, 2006, I complained to Respondent's Human Resource Specialist, Julie Ott, that I believed I was being discriminated against by Levy because of my disability. I also informed Levy and Garcia that I had complained to Julie Ott of discrimination based upon my disability.

12. No action was taken to ameliorate my complaints and any alleged investigation of my complaints was totally inadequate. Morever, based upon information and belief, Respondent has grossly misconstrued my co-workers' comments about their relationship with me.

13. On September 15, 2006, Respondent terminated my employment.

14. I believe my termination was in violation of the Americans with Disabilities Act.

III.  A.  ISSUE/BASIS

Termination on September 15, 2006 because of my record of a disability, inflammatory breast cancer.

B.  **PRIMA FACIE ALLEGATIONS**

1. I was employed by Respondent as a Nurse/Lactation Consultant from 1997 until I was terminated on September 15, 2006.

2. I have a record of a disability, inflammatory breast cancer, within the meaning of the Americans with Disabilities Act.

3. Respondent has been aware that I suffer from inflammatory breast cancer since it was diagnosed in April 2004.

4. Due to the virulent nature of my disease, I initially underwent aggressive chemotherapy treatments prior to my mastectomy in August 2004.

5. I had serious and life threatening side effects from the chemotherapy, as well as serious and painful post operation complications from the mastectomy.

6. Following my mastectomy, I underwent radiation treatments. Due to the virulent nature of my disease, my doctors recommended that I undergo 31 treatments, as opposed to the standard 25. I suffered serious side effects from the radiation treatments.

7. I am currently on several medications in an effort to prevent the further metastasis of the breast cancer. These medications cause serious side effects, including but not limited to degenerative bone and joint diseases.

8. Despite my disability and the many serious complications which developed as a result of the disease and its treatments, I continued to work and perform my job in a satisfactory manner.

9. However, since my diagnosis of breast cancer in 2004, my immediate supervisor, Marie Levy ("Levy") subjected me to discriminatory treatment based upon my disability, which included but is not limited to the following:

   a. Within one week of my return to work in September 2004 following my mastectomy, I received a negative email from my supervisor regarding the proper use of my time. Prior to this occurrence, I do not recall receiving this type of admonishment from Levy or any supervisors during my tenure with Respondent.

   b. I took my radiation treatments during my lunch break, so that I could continue to work. At about the same time that my radiation treatments were ending, I received a Level 3 Warning on or about December 23, 2004 from my supervisor.

   c. In February 2005, I received a "does not meet expectations" performance review from Levy. All my previous reviews, by both Levy and prior supervisors, were "meets expectations" or "exceeds expectations."

   d. The review contained numerous unfounded accusations, anonymous hearsay statements allegedly generated by my co-workers and generalized unprofessional personal attacks upon me. The performance review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

  e.  Per the review, I was required to attend three service in excellence classes and one interpersonal communication class.

  f.  Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

  g.  In January 2006, I was on a medical leave of absence following a laminectomy. Although my doctor permitted me to return to work earlier than expected and with no restrictions, my supervisor prohibited me from returning to my duties as a Lactation Consultant for the first two weeks of my return to work.

  h.  In March 2006, I received a "does not meet expectations" performance review. Once again, the review contained numerous unfounded accusations, anonymous hearsay statements and generalized unprofessional personal attacks upon me, along with a psychological diagnosis of "passive aggressive" to explain my behavior. The review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

  i.  Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

  j.  Per the performance evaluation, I was ordered to attend mandatory EAP and was placed on a Performance Deficiency Notice ("PDN").

  k.  The PDN set forth weekly meetings with my supervisor for a period of 30 days to one year and contained a litany of expectations which were unreasonable, petty, and a blatant effort to set me up for failure.

  l.  Thereafter, I received receiving weekly evaluations from my supervisor which are non-productive and continue to set forth a litany of expectations which are unreasonable, petty and a blatant effort to set me up for failure. For instance, one of the items in the "summary of expected level of performance" states that "no evidence of verbal, non-verbal, defensive or insubordinate behavior toward superiors or co-workers. No evidence of anger, passive-aggressive or silent behavior."

10.  My non-disabled co-workers were not subjected to this type of harassment and scrutiny.

8

11. I complained to Levy's supervisor, Aeran Garcia, on numerous occasions about this treatment. On or about March 31, 2006, I complained to Respondent's Human Resource Specialist, Julie Ott, that I believed I was being discriminated against by Levy because of my disability. I also informed Levy and Garcia that I had complained to Julie Ott of discrimination based upon my disability.

12. No action was taken to ameliorate my complaints and any alleged investigation of my complaints was totally inadequate. Morever, based upon information and belief, Respondent has grossly misconstrued my co-workers' comments about their relationship with me.

13. On September 15, 2006, Respondent terminated my employment.

14. I believe my termination was in violation of the Americans with Disabilities Act.

IV. A. ISSUE/BASIS

Termination on September 15, 2006 in retaliation for complaining of disability discrimination.

B. PRIMA FACIE ALLEGATIONS

1. I was employed by Respondent as a Nurse/Lactation Consultant from 1997 until I was terminated on September 15, 2006.

2. Respondent has been aware that I suffer from inflammatory breast cancer since it was diagnosed in April 2004.

3. Due to the virulent nature of my disease, I initially underwent aggressive chemotherapy treatments prior to my mastectomy in August 2004.

4. I had serious and life threatening side effects from the chemotherapy, as well as serious and painful post operation complications from the mastectomy.

5. Following my mastectomy, I underwent radiation treatments. Due to the virulent nature of my disease, my doctors recommended that I undergo 31 treatments, as opposed to the standard 25. I suffered serious side effects from the radiation treatments.

6. I am currently on several medications in an effort to prevent the further metastasis of the breast cancer. These medications cause serious side effects, including but not limited to degenerative bone and joint diseases.

7. Despite my disability and the many serious complications which have developed as a result of the disease and its treatments, I have continued to work and perform my job in a satisfactory manner.

8. However, since my diagnosis of breast cancer in 2004, my immediate supervisor, Marie Levy ("Levy") has subjected me to discriminatory treatment based upon my disability, which includes but is not limited to the following:

   a. Within one week of my return to work in September 2004 following my mastectomy, I received a negative email from my supervisor regarding the proper use of my time. Prior to this occurrence, I do not recall receiving this type of admonishment from Levy or any supervisors during my tenure with Respondent.

   b. I took my radiation treatments during my lunch break, so that I could continue to work. At about the same time that my radiation treatments were ending, I received a Level 3 Warning on or about December 23, 2004 from my supervisor.

   c. In February 2005, I received a "does not meet expectations" performance review from Levy. All my previous reviews, by both Levy and prior supervisors, were "meets expectations" or "exceeds expectations."

   d. The review contained numerous unfounded accusations, anonymous hearsay statements allegedly generated by my co-workers and generalized unprofessional personal attacks upon me. The performance review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

   e. Per the review, I was required to attend three service in excellence classes and one interpersonal communication class.

   f. Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

   g. In January 2006, I was on a medical leave of absence following a laminectomy. Although my doctor permitted me to return to work earlier than expected and with no restrictions, my supervisor prohibited me from returning to my duties as a Lactation Consultant for the first two weeks of my return to work.

    h.    In March 2006, I received a "does not meet expectations" performance review. Once again, the review contained numerous unfounded accusations, anonymous hearsay statements and generalized unprofessional personal attacks upon me, along with a psychological diagnosis of "passive aggressive" to explain my behavior. The review also contained exaggerated and inaccurate accounts of typical work place issues that arise in a hospital setting.

    i.    Based upon information and belief, the statements attributed to my co-workers were taken out of context and grossly misconstrued by my supervisor.

    j.    Per the performance evaluation, I was ordered to attend mandatory EAP and was placed on a Performance Deficiency Notice ("PDN").

    k.    The PDN set forth weekly meetings with my supervisor for a period of 30 days to one year and contained a litany of expectations which were unreasonable, petty, and a blatant effort to set me up for failure.

    l.    Thereafter, I received weekly evaluations from my supervisor which are non-productive and continue to set forth a litany of expectations which are unreasonable, petty and a blatant effort to set me up for failure. For instance, one of the items in the "summary of expected level of performance" states that "no evidence of verbal, non-verbal, defensive or insubordinate behavior toward superiors or co-workers. No evidence of anger, passive-aggressive or silent behavior."

9.    My non-disabled co-workers were not subjected to this type of harassment and scrutiny.

10.    I complained to Levy's supervisor, Aeran Garcia, on numerous occasions about this treatment. On or about March 31, 2006, I complained to Respondent's Human Resource Specialist, Julie Ott, that I believed I was being discriminated against by Levy because of my disability. I also informed Levy and Garcia that I had complained to Julie Ott of discrimination based upon my disability.

11.    No action was taken to ameliorate my complaints and any alleged investigation of my complaints was totally inadequate. Morever, based upon information and belief, Respondent has grossly misconstrued my co-workers' comments about their relationship with me.

12.    On September 15, 2006, Respondent terminated my employment.

13. I believe I was terminated in retaliation for complaining of discrimination based upon my diagnosis of inflammatory breast cancer, in violation of the Americans with Disabilities Act.

V. A. ISSUE/BASIS

Discrimination based upon mandatory EAP counseling

B. PRIMA FACIE CASE

1. I was employed by Respondent as a Nurse/Lactation Consultant from 1997 until I was terminated on September 15, 2006.

2. In March 2006, my supervisor mandated that I attend an EAP.

3. On no occasion did I exhibit behaviors in the workplace which warranted a mandatory EAP directive.

4. I believe Respondent violated the American with Disabilities Act by mandating that I attend EAP.

G:\Legal\CORRES-ACTIVE\PARHAM\eeoc charge.wpd